FILED

SEP 1 4 2017

Clerk, U S District Court
District Of Montana
Missoula

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| | |
|---|---|
| ALETTE JACKSON,<br><br>    Cross-Claimant/<br>    Cross-Defendant,<br><br>vs.<br><br>SAMANTHA PARKS,<br><br>    Cross-Claimant/<br>    Cross-Defendant. | CV 17–14–M–DWM<br><br>OPINION &<br>ORDER |

    This interpleader action concerns a dispute over who is entitled to the proceeds of an ERISA-qualified life insurance policy. The two claimants have filed cross-motions for summary judgment, each arguing they are entitled to the contested funds. Because ERISA preempts related state law, Claimant Alette Jackson's motion for summary judgment is granted, and Claimant Samantha Parks' motion is denied.

### BACKGROUND

    Life Insurance Company of North America ("North America"), an insurance company with is principal place of business in Philadelphia, Pennsylvania, issued Life Insurance Policy No. FLX-980313, (the "Policy") to Applied Materials, Inc.

-1-

(Doc. 20 at ¶ 1.) Sterling Stanley Jackson ("Sterling"), an Applied Materials employee, subsequently enrolled in the Policy. (*Id.* at ¶ 5.) The Policy is Employment Retirement Income Security Act ("ERISA") qualified. (*Id.* at ¶ 12.) Sterling died on March 11, 2016. (*Id.* at ¶ 6.) The total death benefit owed pursuant to the Policy is $124,123.01, including interest. (*Id.* at ¶ 10.)

Sterling's beneficiary designation under the Policy named Claimant Alette Jackson ("Jackson"), Sterling's spouse at the time. Sterling and Jackson divorced March 17, 2015, roughly a year before Sterling's death. (*Id.*) On October 2, 2015, approximately six months after his divorce and five months before his death, Sterling revised his Last Will and Testament. (Doc. 29-5.) The will devises "[a]ll the rest, residue and remainder of [Sterling's] estate . . . in equal shares to [his] children," Scott Jackson and Samantha Parks. (Doc. 29 at ¶¶ 12-13; Doc. 29-5.) Sterling's will neither refers to nor provides for Jackson. (Doc. 29. at ¶ 14; Doc. 29-5.)[1]

---

[1] Jackson disputes both that Sterling revised his will and that the revised leaves Sterling's estate to his children and makes no mention of Jackson. (Jackson's SDF, Doc. 34 at ¶¶ 12-14.) Jackson argues she is without sufficient information to admit or deny them, (*Id.* citing Jackson's Answer, Doc. 26 at ¶¶ 4-6), but provides no evidence in support, and does not acknowledge that the Will does not mention Jackson and leaves Sterling's estate to his children, (Doc. 29-5). Jackson therefore fails to "cite[] to particular parts of materials in the record," or "show that the materials cited [by Parks] do not establish the absence . . . of a genuine dispute, or that [Parks] cannot produce admissible evidence to support the

Sterling's estate was opened for probate on March 25, 2016, in the Eleventh District Court of Montana, Flathead County. (Doc. 29 at ¶ 10.) Claimant Samantha Parks ("Parks") was appointed personal representative of the estate. (Doc. 20 at ¶ 3.) On February 6, 2017, North America filed a Complaint for Interpleader requesting a judicial determination of the proper payee or payees for benefits from the Policy. (Doc. 1.) The Complaint named Alette Jackson and Samantha Parks, as the personal representative of Sterling's estate. (*Id.*) North America deposited the contested funds with the Court, (Doc. 10), and was dismissed from the case, (Doc. 23). Claimants Jackson and Parks remain in the case as cross-defendants. They have now filed cross-motions for summary judgment, each requesting a declaratory judgment that they are entitled to the contested funds. (Docs. 27, 30.)

## STANDARD

A party seeking summary judgment will prevail if it can demonstrate that "there is no genuine dispute as to any material fact and [it] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Accordingly, summary judgment is appropriate where the evidence produced by the parties permits only one conclusion. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 (1986). While

---

fact." Fed. R. Civ. P. 56(c)(1)(A),(B).

factual disputes irrelevant or unnecessary to the outcome of the case are not considered, in deciding a motion for summary judgment a court must draw "all justifiable inferences" in favor of the party against whom summary judgment is asserted. *Id.* at 248, 255. "[W]hen parties submit cross-motions for summary judgment, each motion must be considered on its own merits." *Fair Hous. Council of Riverside Cnty., Inc. v. Riverside Two*, 249 F.3d 1132, 1136 (9th Cir. 2001) (citations and internal punctuation marks omitted). "It is well-settled . . . that the filing of cross-motions for summary judgment . . . does not vitiate the court's responsibility to determine whether disputed issues of material fact are present." *United States v. Fred A. Arnold, Inc.*, 573 F.2d 605, 606 (9th Cir. 1978).

## DISCUSSION

### I. ERISA and Montana Code Annotated § 72-2-814

Parks argues that the contested funds should be distributed to the estate because Montana Code Annotated § 72-2-814 revoked Jackson's interest in those funds when she and Sterling divorced. Jackson argues that ERISA preempts § 72-2-814, and that she is the rightful recipient of the contested funds. Jackson is correct.

#### A. ERISA

In passing ERISA, Congress acted "to protect the rights of workers who

earn pension benefits and to encourage plan participation." *Carmona v. Carmona*, 603 F.3d 1041, 1053 (9th Cir. 2010) (citation omitted). ERISA is "an intricate, comprehensive statute that governs both pension and welfare plans." *Id.* Among its requirements, ERISA established "'a straightforward rule of hewing to the directives of the plan documents,'" creating "'a bright-line requirement to follow plan documents in distributing benefits." *Id.* (citing *Kennedy v. Plan Admin. for DuPont Savings & Inv. Plan*, 555 U.S. 285, 300, 302 (2009)). To that end, "ERISA's pre-emption section, 29 U.S.C. § 1144(a), states that ERISA 'shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan' covered by ERISA." *Egelhoff v. Egelhoff*, 532 U.S. 141, 146 (2001).

"[A] state law relates to an ERISA plan 'if it has a connection with or reference to such a plan.'" *Id.* at 147 (quoting *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 97 (1983)). To evaluate the "connection with" prong of ERISA preemption analysis, courts must "look both to the objectives of the ERISA statute as a guide to the scope of the state law that Congress understood would survive, as well as the nature of the effect of the state law on ERISA plans." *Id.* (citing *Cal. Div. of Labor Stds. Enf. v. Dillingham Constr., N.A., Inc.*, 519 U.S. 316, 325 (1997)).

### B. Montana Code Annotated § 72-2-814

Section 72-2-814 governs the revocations of probate and nonprobate transfers by divorce. In pertinent part, it provides:

> (2) Except as to a retirement system established in Title 19 or as provided by the express terms of a governing instrument, a court order, or a contract relating to the division of the marital estate made between the divorced individuals before or after the marriage, divorce, or annulment, the divorce or annulment of a marriage: (a) revokes any revocable: (i) disposition or appointment of property made by a divorced individual to the individual's former spouse in a governing instrument
> . . . .

§ 72-2-814(2)(a)(i). The statute defines "governing instrument" as "a governing instrument executed by the divorced individuals before the divorce," and defines "revocable" as "a disposition . . . under which the divorced individual, at the time of the divorce . . . was alone empowered, by law or under the governing instrument, to cancel the designation in favor of the individual's former spouse." § 72-2-814(1)(d),(f). The Montana Supreme Court has held that § 72-2-814 applies to a life insurance policy owner's designation of his spouse as the beneficiary, where the parties later divorced. *Thrivent Fin. for Lutherans v. Andronescu*, 300 P.3d 117, 118 (Mont. 2013). The Court held that the statute "operates at the time of the insured's death and applies to any divorce that took place during the insured's lifetime." *Id.* Thus, under Montana law, if a life

insurance policy holder designates his or her spouse as the beneficiary but subsequently divorces, the former spouse's interest in the life insurance benefits is revoked by operation of law.

C. Analysis

Parks argues that, because Sterling and Jackson divorced approximately a year before Sterling's death, § 72-2-814 revoked Jackson's interest in the Policy proceeds. Parks contends that ERISA should not preempt Montana law because ERISA's preemption clause is broad and does "not always preempt state law." (Doc. 28 at 12.) In response, Jackson, citing *Egelhoff*, argues that ERISA does preempt § 72-8-814. Jackson has the better argument.

In *Egelhoff*, the Supreme Court considered whether a Washington statute governing the disposition of nonprobate assets was preempted where the decedent had designated his former wife as the beneficiary under his ERISA-qualified life insurance and pension plans but had not removed her as the listed beneficiary following their divorce and prior to his death intestate in a car accident. 532 U.S. at 144. The statute in question provided that "'[i]f a marriage is dissolved or invalidated, a provision made prior to that event that relates to the payment or transfer at death of the decedent's interest in a nonprobate asset in favor of or granting an interest or power to the decedent's former spouse is revoked.'" *Id.*

(quoting Wash. Rev. Code § 11.01.010(2)(a) (1994)).

The Court concluded "that the statute [was] expressly pre-empted by ERISA." *Id.* at 146. Because '[t]he statute [bound] ERISA plan administrators to a particular choice of rules for determining beneficiary status," and required administrators to "pay benefits to the beneficiaries chosen by state law," the Court reasoned it was "connected to" ERISA by implicating "an area of core ERISA concern." *Id.* at 147. In particular, the statute would have abrogated the ERISA requirements "that a plan shall 'specify the basis on which the payments are made to and from the plan,' § 1102(b)(4), and that the fiduciary shall administer the plan 'in accordance with the documents and instruments governing the plan,' § 1104(a)(1)(D), making payments to a 'beneficiary' who is 'designated by a participant, or by the terms of [the] plan.' § 1002(8)." *Id.*

Here, the operation of § 72-2-814 is analogous to that of the preempted Washington statute. Namely, it would require the plan administrator to look to state law to determine to whom payments should be made from the plan, rather than to the plan itself. Under the Policy, Jackson is entitled to the contested funds because she is the named beneficiary. But under Montana law, Parks would be entitled to that money, as Sterling and Jackson's divorce would have revoked Jackson's interest in the Policy proceeds. That different outcome is in fact exactly

what Parks hopes to achieve.

Similarly, Parks' arguments that the comments to § 72-2-814 create space for the Court to apply Montana law in the face of ERISA does not escape *Egelhoff*, Supreme Court precedent that is squarely on-point. Nor does Parks' reliance on *Mendez-Bellido v. Board of Trustees of Division 1181, A.T.U. New York Employees Pension Fund & Plan*, a case involving a slayer statute, provide assistance. 709 F. Supp. 329 (E.D.N.Y. 1989). Besides the fact that this case does not involve a slayer statute, the Supreme Court expressly declined to decide the issue. *Egelhoff*, 532 U.S. at 152.

Because ERISA preempts state law "connected with" ERISA-qualified employee benefit plans, *id.* at 147, Jackson is entitled to the contested funds as the named beneficiary under Sterling's Policy.

## II. Unjust Enrichment and Constructive Trust

Parks further argues that, under Montana law, Jackson will be unjustly enriched if she is permitted to retain the Policy proceeds, and asks for an imposition of a constructive trust on the contested funds. Jackson rebuts the claim of unjust enrichment as also preempted by ERISA in this context. Jackson's argument is once again persuasive.

"A constructive trust arises when a person holding title to property is

what Parks hopes to achieve.

Similarly, Parks' arguments that the comments to § 72-2-814 create space for the Court to apply Montana law in the face of ERISA does not escape *Egelhoff*, Supreme Court precedent that is squarely on-point. Nor does Parks' reliance on *Mendez-Bellido v. Board of Trustees of Division 1181, A.T.U. New York Employees Pension Fund & Plan*, a case involving a slayer statute, provide assistance. 709 F. Supp. 329 (E.D.N.Y. 1989). Besides the fact that this case does not involve a slayer statute, the Supreme Court expressly declined to decide the issue. *Egelhoff*, 532 U.S. at 152.

Because ERISA preempts state law "connected with" ERISA-qualified employee benefit plans, *id.* at 147, Jackson is entitled to the contested funds as the named beneficiary under Sterling's Policy.

## II. Unjust Enrichment and Constructive Trust

Parks further argues that, under Montana law, Jackson will be unjustly enriched if she is permitted to retain the Policy proceeds, and asks for an imposition of a constructive trust on the contested funds. Jackson rebuts the claim of unjust enrichment as also preempted by ERISA in this context. Jackson's argument is once again persuasive.

"A constructive trust arises when a person holding title to property is

what Parks hopes to achieve.

Similarly, Parks' arguments that the comments to § 72-2-814 create space for the Court to apply Montana law in the face of ERISA does not escape *Egelhoff*, Supreme Court precedent that is squarely on-point. Nor does Parks' reliance on *Mendez-Bellido v. Board of Trustees of Division 1181, A.T.U. New York Employees Pension Fund & Plan*, a case involving a slayer statute, provide assistance. 709 F. Supp. 329 (E.D.N.Y. 1989). Besides the fact that this case does not involve a slayer statute, the Supreme Court expressly declined to decide the issue. *Egelhoff*, 532 U.S. at 152.

Because ERISA preempts state law "connected with" ERISA-qualified employee benefit plans, *id.* at 147, Jackson is entitled to the contested funds as the named beneficiary under Sterling's Policy.

## II. Unjust Enrichment and Constructive Trust

Parks further argues that, under Montana law, Jackson will be unjustly enriched if she is permitted to retain the Policy proceeds, and asks for an imposition of a constructive trust on the contested funds. Jackson rebuts the claim of unjust enrichment as also preempted by ERISA in this context. Jackson's argument is once again persuasive.

"A constructive trust arises when a person holding title to property is

subject to an equitable duty to convey it to another on the ground that the person holding title would be unjustly enriched if the holder were permitted to retain it." Mont. Code Ann. § 72-38-123. "[T]he imposition of a constructive trust serves as a possible remedy to rectify the unjust enrichment of a party." *N. Cheyenne Tribe v. Roman Catholic Church ex rel. Dioceses of Great Falls/Billings*, 296 P.3d 450, 457 (Mont. 2013). Under Montana law:

> [a] claim for unjust enrichment, in the context of a constructive trust, requires proof of three elements: "(1) a benefit conferred upon a defendant by another; (2) an appreciation or knowledge of the benefit by the defendant; and (3) the acceptance or retention of the benefit by the defendant under such circumstances that would make it inequitable for the defendant to retain the benefit without payment of its value."

*Volk v. Goeser*, 367 P.3d 378, 389 (Mont. 2016) (quoting *N. Cheyenne Tribe*, 296 P.3d at 457).

Here, the undisputed facts show the first two elements of an unjust enrichment claim would be met if Jackson were awarded the contested funds. First, a benefit (the contested funds) would be conferred upon her by another (North America). Second, Jackson would have knowledge of that benefit (as her participation in this lawsuit demonstrates).

But resolution of the third element is not as clear. The facts show Sterling executed a will following his divorce from Jackson, and that the will contained no

mention of Jackson. (Doc. 29-5.) However, though an adverse inference may be drawn from Sterling's decision to omit Jackson from his will, that inference still leaves open a question of fact as to Sterling's motivation in leaving Jackson as the named beneficiary under the Policy. The third element of unjust enrichment therefore raises questions of disputed fact. However, summary judgment regarding a constructive trust is still appropriate.

Even if Parks succeeded in her unjust enrichment claim, she would still face ERISA preemption because the Ninth Circuit has held that "a state law constructive trust cannot be used to contravene the dictates of ERISA." *Carmona*, 603 F.3d at 1061. In *Carmona*, the Ninth Circuit considered whether "a participant to an ERISA regulated Qualifed Joint and Survivor Annuity . . . plan may change the surviving spouse beneficiary after the participant has retired and the annuity has become payable." *Id.* at 1047-48. The court answered in the negative, stating that the retirement of the plan participant "ordinarily creates a vested interest in the surviving spouse at the time of the participant's retirement." *Id.* at 1048.

Because a Nevada state court had imposed a constructive trust on the annuity proceedings in question, the court also had to consider whether it was permissible for a state court to create a constructive trust on annuity proceedings

from an ERISA-qualified pension plan, with the decedent's subsequent wife as the beneficiary. *Id.* at 1061. After first holding the state court's Qualified Domestic Relations Order could not reassign surviving spouse benefits after the plant participant had retired (and the interest had vested), *id.* at 1058, the court noted that

> a state court cannot achieve through a constructive trust on the proceeds of a pension plan what this court maintains it cannot achieve through a [Qualified Domestic Relations Order]. Any alternative rule would allow for an end-run around ERISA's rules and Congress's policy objective of providing for certain beneficiaries, thereby greatly weakening, if not entirely abrogating, ERISA's broad preemption provision.

*Id.* at 1061. While noting that "[i]t may not be that all constructive trusts instituted by state courts, particularly those that seek to recover ill-gotten gains, will have a sufficient connection with or reference to an ERISA plan to trigger ERISA's preemption provision," the court held that "when a state court creates a constructive trust with the explicit purpose of avoiding ERISA's rules, it too must be preempted." *Id.* at 1062.

Here, while any constructive trust would be the product of a federal rather than a state court, the end would be to circumvent ERISA's requirement that the contested funds be paid to the named beneficiary. As such, a constructive trust would be an impermissible attempt to evade *Egelhoff* and the ERISA preemption

requirement.

Parks accurately notes that *Carmona* leaves open the possibility that imposition of a constructive trust may not be sufficiently connected to ERISA to be preempted. Parks latches on to this potential exception to further argue that a constructive trust here would not violate ERISA because: (1) the Supreme Court in *Kennedy*, while ruling that the terms of an ERISA-qualified pension plan controlled who was the beneficiary of the plan, did not "express any view as to whether [an estate] could have brought an action in state or federal court against [an ex-spouse] to obtain the benefits after they were distributed," 555 U.S. at 299 n.10; and (2) the instant case is not controlled by *Carmona*'s ban on constructive trusts on ERISA benefits because *Carmona* concerned a pension plan, 603 F.3d at 1053, and not, as is the case here, a welfare benefit plan. These considerations may muddy the waters, but do not obscure *Egelfhoff*'s conclusion that ERISA preempts state laws such as Montana's divorce revocation statute, 532 U.S. at 151, nor *Carmona*'s rule "that a state law constructive trust cannot be used to contravene the dictates of ERISA," 603 F.3d at 1061.

As to the first, *Kennedy*'s silence as to the precise question at issue here does not in turn mean that application of a constructive trust on life insurance benefits disbursed pursuant to an ERISA plan would not violate ERISA

preemption. As discussed above, ERISA preempts state law "related to an employee benefit plan," 29 U.S.C. § 1144(a), and the Supreme Court has held such preemption applies where a state divorce statute would mandate a beneficiary other than the one named in the ERISA-qualified plan, *Egelhoff*, 532 U.S. at 151. To apply a constructive trust to the distributed funds under these circumstances would elevate form over substance and thereby "contravene the dictates of ERISA." *Carmona*, 603 F.3d at 1061.

As to the second, the distinction between a pension plan and a welfare benefit plan is one without a difference in this context. Although, as Parks points out, pension plans are subject to statutory requirements that do not pertain to welfare benefit plans, both are subject to the ERISA preemption provision. 29 U.S.C. § 1144(a). Citing *Carmona*, the Ninth Circuit has held that "the preemption provision of ERISA precludes the imposition of a constructive trust upon the proceeds" from a life insurance policy." *St. Julian v. St. Julian*, 2012 WL 1377028, at *1 (9th Cir. April 20, 2012) (unpublished). And the United States District Court for the District of Idaho, when confronted with the question of whether a constructive trust could be imposed on the benefits from an ERISA-qualified life insurance policy, relied on *Carmona* and *St. Julian* in holding that it could not. *See Orr v. Prudential*, Case No. 1:11-cv-00647-BLW (June 12, 2012)

-14-

(Doc. 37-1). The district court reasoned that "it makes no difference that *Carmona* involved pension plan benefits and this case involves employee welfare plan benefits," because "[t]he principle behind *Carmona*—that a plaintiff cannot use a constructive trust to make an end-run around ERISA requirements—applies equally to both types of benefits." *Id.* at 5-6. The same logic applies here, where a constructive trust would provide an end-run around ERISA requirements. Imposition of a constructive trust on the contested funds is inappropriate.

## CONCLUSION

IT IS ORDERED that Jackson's Motion for Summary Judgment (Doc. 30) is GRANTED and Park's Motion for Summary Judgment (Doc. 27) is DENIED.

IT IS FURTHER ORDERED that the Clerk of Court is directed to enter judgment in favor of Alette Jackson and against Samantha Parks.

IT IS FURTHER ORDERED that execution of that judgment is STAYED until time for appeal has expired and no appeal has been taken, or, if appeal is taken, the case is resolved by the Ninth Circuit Court of Appeals or by settlement.

DATED this 14th day of September, 2017.

Donald W. Molloy, District Judge
United States District Court